## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**MERWIN KLEIN and**
**RICHARD KLEIN as Attorney-**
**In-Fact for MERWIN KLEIN**

**Plaintiffs,**                                          **Civil Action: _____**


**v.**

**LEXINGTON INSURANCE COMPANY,**

 **Defendant,**

_____/

### AMENDED COMPLAINT

(amended as to attaching Exhibit "A")

COMES NOW THE Plaintiffs, **MERWIN KLEIN and RICHARD KLEIN as Attorney-In-**

**Fact for MERWIN KLEIN**, ("Plaintiff" or "Insured"), by and through undersigned counsel,

who file this Complaint, with all allegations made upon present information and belief, against

Defendant, **LEXINGTON INSURANCE COMPANY,** ("Defendant" or "Insurer"), on the

grounds set forth below:

### JURISDICTION

1.  This action arises under the National Flood Insurance Act, as amended, 82 Stat. 582, 42

    U.S.C. Section 4001, et seq., pursuant to the insurance contract issued to the Plaintiff by

    Defendant, as hereinafter more fully appears. This action, having arisen under an applicable

federal statute, namely 42 U.S.C. Section 4072, requires the application of federal law

pursuant to the general federal jurisdiction provisions of 28 U.S.C. Section 1331.

## VENUE

2.  The property made the basis of this action is located at 521 Randy Ln Fort Myers Beach, FL

33931(hereinafter referred to as the "Insured Property"). The insured property is situated in

the Middle District of Florida, Fort Myers Division, and venue is proper in this Court

pursuant to 42 U.S.C. Section 4072 and 44 C.F.R. Pt. 61, App. A(1), Article VII(R).

## PARTIES

3.  Plaintiff ("Plaintiff" or "Insured"), **MERWIN KLEIN**, was, and still is, the owner of the

Insured Property at all times material to the allegations set forth in the Complaint.  Plaintiff

**RICHARD KLEIN**, at all relevant times, is the attorney-in-fact for **MERWIN KLEIN**

through a durable power of attorney executed by **MERWIN KLEIN**.

4.  Defendant, **LEXINGTON INSURANCE COMPANY,** ("Defendant" or "Insurer"), was

and is a private flood insurance company which is qualified to do business in the State of

Florida. Defendant issued a Standard Flood Insurance Policy (SFIP) to the Plaintiff. Pursuant

to 44 C.F.R. Section 62.23(d) and (i)(6), Defendant is responsible for arranging the

adjustment, settlement, payment, and defense of all claims arising under the Policy,

including this one.

## FACTUAL ALLEGATIONS

5. Defendant issued an insurance policy to Plaintiff, namely, Policy No. FF2026144253

("Policy"), whereby Defendant agreed to pay the Plaintiff for direct physical loss to the Insured

Property caused by or from a "flood" as defined by the Policy. (A true and correct copy of the

Policy is attached herein as **Exhibit "A"**).

6. Plaintiff dutifully paid the premiums charged by Defendant for the coverages afforded pursuant to the terms of the Policy and the Policy was in full force effect on the date of loss.

7. On or about September 28, 2022, the date of loss, the aforementioned Insured Property sustained damage as a result of a covered peril, namely flooding, from Hurricane Ian, which caused substantial property damage and further insured losses.

8. The purportedly covered damages were thoroughly documented by the experts retained by the Plaintiff, with supporting documentation, including specifications of the damaged dwelling and detailed, accurate repair estimates, were submitted to Defendant.

9. Plaintiff submitted a claim, Defendant acknowledged the claim, opened coverage, and assigned Claim Number 22-01955, and/or FF2026144253 and/or 000042462FR to the claim/loss.

10. Damage, as a result of a flood, was or should have been, if properly evaluated, a covered cause of loss pursuant to the terms and conditions of the Policy so issued.

11. The Proof of Loss detailing the losses was received by Defendant in compliance with the terms of the Policy.

12. Despite multiple attempts by Plaintiff to move the claim toward resolution, Defendant has repeatedly failed honor its Policy obligations and failed to indemnify Plaintiff for the loses sustained.

## COUNT I - BREACH OF INSURANCE CONTRACT

13. Plaintiff adopts and incorporates into this Count, as if fully rewritten herein, all of the allegations set forth in the above paragraphs.

14. Damage, as a result of a flood, was a covered cause of loss pursuant to the terms and conditions of the insurance policy issued by Defendant.

15. Plaintiff submitted a timely claim to Defendant for the alleged damages and have met all conditions precedent to the filing of a lawsuit, or all conditions precedent have been waived by Defendant.

16. Plaintiff submitted a factually detailed estimate of the damages and a sworn statement in Proof of loss, outlining a dispute as to the proper actual cash value.

17. Defendant has breached its insurance contract with Plaintiff by denying or constructively denying Plaintiff's claims for damages.

18. Defendant has breached its insurance contract with Plaintiff by failing and refusing to tender all insurance proceeds due and owing because of the purportedly covered loss.

19. Defendant has further breached its insurance contract with Plaintiff by failing and refusing to properly and fairly adjust all losses with its insured as required by the Policy.

20. As a result of Defendant's breach of insurance contract, as alleged herein, and also as will be demonstrated in discovery, Plaintiff has been deprived of the full coverage and other benefits afforded under the Policy.

21.  Further, due to the actions of Defendant, Plaintiff had to retain the undersigned attorney and firm and has agreed to pay a reasonable fee for which Defendant is liable under *Fla. Stat. 627.428.*

WHEREFORE, Plaintiffs  pray that after due proceedings are heard, that this Honorable Court enter Judgment in favor of Plaintiff and against the Defendant, **LEXINGTON INSURANCE**

**COMPANY,** for all amounts for damages to which it is entitled due to Defendant's breach of the insurance contract, and for such other costs, expenses, and other relief that this Honorable Court may deem to be in accordance with the applicable law, including applicable attorneys' fees, and as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury for all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 28, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day upon all counsel of record or pro se parties identified in the following Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

**VishioForry Insurance Lawyers**

*/s/ Garrett William Haakon Clifford, Esq.*
Garrett William Haakon
Clifford, Esq. Fla. Bar
107315 *Attorney for*
*Plaintiff*
1112 Goodlette-Frank Road, Suite 204,
Naples, Florida 34102

(239) 703-7210
(239) 900-1993 (Fax)
service@vishioforry.com
kkelemen@vishioforry.com

EXHIBIT "A"



# Private Market Flood Policy

## This Insurance

is effective with Lexington Insurance Company, a member of AIG, Inc.

## This Certificate

Is issued in accordance with the limited authorization granted to the Correspondent at Lexington Insurance Company whose names and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, underwriters hereby bind themselves each for his own part and not one for another, their heirs, executors, and administrators.

## The Assured

is requested to read this Certificate, and if not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

The Flood Insurance Agency

5700 SW 34th St., Suite 402-B
Gainesville, FL 32608
877-356-6348

# SCHEDULE OF FORMS AND ENDORSEMENTS

**91222 (09 16)**                          **Policyholder Notice**

**Information**                            **Information**

**FF2026144253**                           **Declarations**

**LEX 03 05 15**                           **Private Market Flood Policy Dwelling Form**

**PR4225 (07 13)**                          **Economic Sanctions Endorsement**

**315931 (07 19)**                          **Floodready Endorsement**

**(08 20)**                                **Privacy and Data Security Notice**

**84130 (03 14)**                           **TFIA Privacy Statement**

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

**INFORMATION**

---

**AVAILABILITY OF FLOOD INSURANCE COVERAGE UNDER**

**THE NATIONAL FLOOD INSURANCE PROGRAM**

Similar coverage as contained in this policy is available from insurance agents representing the FEMA National Flood Insurance Program. You can locate an agent at www.floodsmart.gov .

---

*This policy meets the definition of private flood insurance contained in 42 U.S.C. 4012a(b)(7) and the corresponding regulation.*

---

**THIS POLICY MEETS ALL OF THE PROVISIONS REQUIRED BY THE**

**TITLE II—FLOOD INSURANCE**

**Subtitle A—Flood Insurance Reform and Modernization**

**SEC. 100201. SHORT TITLE.**

**This subtitle may be cited as the ''Biggert-Waters Flood Insurance Reform Act of 2012''.**

''(7) PRIVATE FLOOD INSURANCE DEFINED.—In this sub-section, the term 'private flood insurance' means an insurance policy that—

''(A) is issued by an insurance company that is—

''(i) licensed, admitted, or otherwise approved to engage in the business of insurance in the State or jurisdiction in which the insured building is located, by the insurance regulator of that State or jurisdiction; or

''(ii) in the case of a policy of difference in conditions, multiple peril, all risk, or other blanket coverage insuring nonresidential commercial property, is recognized, or not disapproved, as a surplus lines insurer by the insurance regulator of the State or jurisdiction where the property to be insured is located;

''(B) provides flood insurance coverage which is at least as broad as the coverage provided under a standard flood insurance policy under the national flood insurance program, including when considering deductibles, exclusions, and conditions offered by the insurer;

''(C) includes—

''(i) a requirement for the insurer to give 45 days written notice of cancellation or non-renewal of flood insurance coverage to—

''(I) the insured; and

''(II) the regulated lending institution or Federal agency lender;

''(ii) information about the availability of flood insurance coverage under the national flood insurance program;

''(iii) a mortgage interest clause similar to the clause contained in a standard flood insurance policy under the national flood insurance program; and

''(iv) a provision requiring an insured to file suit not later than 1 year after date of a written denial of all or part of a claim under the policy; and

''(D) contains cancellation provisions that are as restrictive as the provisions contained in a standard flood insurance policy under the national flood insurance program.''.

---

# Private Flood Insurance Program
# Standard Flood Insurance Policy Dwelling Form

## Summary of changes from the National Flood Insurance Program Standard Flood Insurance Policy Dwelling Form

**1/**  In respect of the Expense Constant charge as defined in Section II. Sub-section B.16. of the PFIP Flood Insurance Policy, the insured is not responsible for this charge.

As a note, Expense Constant has also been removed from the FEMA NFIP Standard Flood Insurance Policy. If you would like a copy of the Final Rule eliminating this coverage from the FEMA NFIP policy dated 4th April 2003, please request this from The Flood Insurance Agency.

**2/**  In respect of the Federal Policy Fee as defined in Section II. Sub-section B.17. of the PFIP Flood Insurance Policy, the insured is not responsible for this fee.

**3/**  "**Policy Fee**" is added to Section II as Sub-section B.29. and is defined as follows:

**29. Policy Fee** means a flat charge you must pay on each new or renewal **policy**.

**4/**  "**PFIP**" is added to Section II as Sub-section B.30. and is defined as follows:

**30.** Private Flood Insurance Policy ("**PFIP**") means this **policy**.

**5/**  In respect of Section III. D. 3. a. (1) (a), this is removed and replaced with the following:

(a)  The structure is covered by a contract of flood insurance issued under the **PFIP**.

**6/**  In respect of Section III. D. 3. a. (1) (d), "**NFIP**" is removed and replaced with "**NFIP** and, or **PFIP**".

**7/**  In respect of Section VII.B. d., "**NFIP**" is removed and replaced with "**PFIP**".

**8/**  In respect of Section VII.B. d., the final sentence "relating to this **policy** or any other **NFIP** insurance" is removed and replaced with the following:

relating to this **policy** or any other **PFIP** insurance.

**9/**  In respect of Section VII. D, reference to the "Federal Insurance Administrator" is removed and replaced with "Underwriters".

**10/**  In respect of Section VII. T. 2. b. (2), the sentence "If any of these allowable structures are insurable buildings under the **NFIP** and are insured under the **NFIP**, they will not be eligible for the benefits of this paragraph **T.2.**" is removed and replaced with the following:

If any of these allowable structures are insurable buildings under the **NFIP** and are insured under the **PFIP**, they will not be eligible for the benefits of this paragraph **T.2.**

**11/**  In respect of Section VII. T. 2. c., reference to "FEMA" is removed and replaced with "Underwriters".

**12/**  In respect of Section VII. T. 2. e. (2), reference to "FEMA" is removed and replaced with "FEMA and Underwriters".

**13/**  In respect of Section VII. T. 2. g, reference to "**NFIP**" is removed and replaced with "**NFIP** and/or **PFIP**".

**14/**  In respect of Section VII. U. 1.and U. 2., "**NFIP policy**" is removed and replaced with "**PFIP policy**".

**15/**  In respect of Section IX. **WHAT LAW GOVERNS**, this is removed and replaced by: This Insurance shall be governed by and construed in accordance with the law of the State of [see property state on declaration page]. Each party agrees to submit to the exclusive jurisdiction of any competent court within the United States of America.

**16/ CANCELLATION AND NON-RENEWAL PROVISION**

We may cancel or non-renew this certificate by providing not less than forty-five (45) days' advance written notice to both the insured and any mortgagee listed on the policy. If we cancel or non-renew this certificate, coverage provided for the described location(s) shall remain in force until the later of expiration, non-renewal or cancellation of coverage, provided you have paid the applicable premium.

In the case that this policy is not acceptable to the Mortgagee and the Mortgagee has confirmed this in writing and within 45 days of the policy effective date, Underwriters agree to cancel this policy flat from inception.

**17/** In respect of Section VII. E. 1., Flood insurance coverage may be terminated mid-term or for a full term by either canceling or nullifying the policy, only in accordance with a valid reason for the transaction, as described on our website, www.privatemarketflood.com



Insurance is effective with Lexington Insurance Company
Program Administrator: The Flood Insurance Agency, Inc.,
Gainesville, FL 32608

# FLOOD POLICY RENEWAL DECLARATIONS

| | |
|---|---|
| **Policy Number:** | FF2026144253 |
| **Authority Reference Number:** | 000042462FR |
| **Policy Effective Date:** | 06/21/2022 12:01 AM |
| **Policy Expiration Date:** | 06/21/2023 12:01 AM |
| **Endorsement Effective Date:** | 08/31/2022 |
| **Property Location:** | 521 RANDY LN |
| | FORT MYERS BEACH, FL 33931 |

**Insured Name(s) and Mailing Address:**
MERWIN KLEIN
521 RANDY LN
FORT MYERS BEACH, FL 33931

**Broker:**
MY FLORIDA INSURANCE INC
JEN JOHNSON
28280 OLD 41 RD #17
BONITA SPRINGS, FL 34135
(877) 361-6935

| | | | | |
|---|---|---|---|---|
| **Building Occupancy:** | SINGLE FAMILY | **Date of Construction:** | 12/01/1965 |
| **Property Description:** | N/A | **Elevation Difference:** | N/A |
| **Number of Units:** | 1 Unit(s) | **Community Number:** | 120673 |
| **Number of Floors:** | 1 Floor(s) | **Community Name:** | FORT MYERS BEACH, TOWN |
| **Basement/Encl/Crawlspace:** | SLAB ON GRADE | | OF |
| **Current Flood Zone:** | AE | **Principal/Primary Residence:** | YES |
| **Grandfathered:** | NO | **Condominium Indicator:** | NOT A CONDO |
| **Flood Risk/Rated Zone:** | AE | **Replacement Cost:** | $350,000 |
| **Payor:** | INSURED | **County:** | LEE |

| Type | Coverage | Deductible | Basic Coverage | Basic Rate | Add'l Coverage | Add'l Rate | Deductible Discount | Premium |
|---|---|---|---|---|---|---|---|---|
| Building | $250,000 | $5,000 | Included | Included | Included | Included | Included | $3,068.46 |
| Contents | $0 | $0 | -- | -- | -- | -- | -- | $0.00 |

| | | | |
|---|---|---|---|
| **SL Tax:** | $157.51 | **Total Coverage Premium:** | $3,068.46 |
| **Stamping Fee:** | $1.91 | **ICC Premium:** | $70.00 |
| | | **Policy Fee:** | $50.00 |
| This Declaration Page is attached to and forms part of the Policy. | | **Surplus Lines Tax and Fees:** | $159.42 |
| Coverage limitations may apply. See your policy form for details. | | **Grand Total:** | **$3,347.88** |

| | | |
|---|---|---|
| Standard Policy - Dwelling Form Forms attached hereto and special conditions: Private Flood Insurance Policy, FloodReady Endorsement | Service of Suit may be made upon: Counsel, Legal Department Lexington Insurance Company 99 High St, Boston, MA 02110 | **PAID IN FULL**<br>**THIS IS NOT A BILL** |

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER." F.S.A subsection 626.924 SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY Broker: Eric Weber   Address: 5700 SW 34th Street, Ste 402-B, Gainesville, FL 32608   License: W153246**

To report a claim, please notify Alacrity Solutions 1-866-979-9400, 9013 Perimeter Woods Drive, Suite D, Charlotte, NC 28216

**By** _Ellen_ **Correspondent Date: 10/03/2022**
**Cover Holder Phone Number: 877-356-6348**

**Did you protect your personal property?**

If the coverage limits next to "contents" shows $0, you did not purchase coverage for your personal belongings. Contents coverage in a residential building is available up to $250,000. Get an instant quote for your contents by going to https://www.privatemarketflood.com/calculate-your-own-premium/ Contents coverage can be added to the policy any time during the policy period and is subject to a 14 day waiting period from the time payment is received.

**Will you receive a Replacement Cost Loss Settlement at the time of your loss?**

Single family dwellings that are the Primary Residence (lived in by you 80% of the year) may be eligible for replacement cost loss settlement as long as the building is insured to at least 80% of its full replacement cost value or $250,000. Other conditions apply; see section **V. Loss Settlement** of the policy for full details. Get an instant quote for additional building coverage by going to: https://www.privatemarketflood.com/calculate-your-own-premium/ Other Residential and Non-residential buildings are not eligible for Replacement Cost Loss Settlement.

**When a loss occurs:**

Contact information to report a claim is on the front of this declaration page.

**Information we will need from you:**

- Date of Loss
- Description of Loss
- Your contact information including temporary address if you are not able to stay in your building
- Phone number where you can be reached during the evening
- Your email address

**Important Tips:**

- If waters rise in your building before you can leave safely, move to the highest level necessary - even the roof. Take extra clothing, your radio, a flashlight and, if possible, food.
- If you have time, turn off electricity at your breaker or fuse box and close the main gas valve; get valuables (furs, jewelry, important papers) to a higher level; fill bathtubs, sinks and plastic soda bottles with water. (Sanitize tubs and sinks with bleach, rinse and then fill); bring outdoor possessions (lawn furniture, grills, etc.) inside or tie them down securely.
- Keep away from downed power lines and any other electrical wires - electrocution is a major cause of death during floods.
- If you hear hissing or smell gas, leave immediately and call the gas company. Using your home phone or cell phone inside the building could spark and cause an explosion.

**More claims information and resource links are available on our website at:**

https://www.privatemarketflood.com/claims

**Fraud Warning:**

Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**By** _Ella_  **Correspondent Date: 10/03/2022**
**Cover Holder Phone Number: 877-356-6348**



# Lexington Insurance Company
# Private Flood Insurance Program

## Standard Flood Insurance Policy
### Dwelling Form

PLEASE READ THE POLICY CAREFULLY. THE FLOOD INSURANCE PROVIDED IS SUBJECT TO LIMITATIONS, RESTRICTIONS, AND EXCLUSIONS.

THIS POLICY COVERS ONLY:

1      A NON-CONDOMINIUM RESIDENTIAL BUILDING DESIGNED FOR PRINCIPAL USE AS A DWELLING PLACE FOR ONE TO FOUR FAMILIES, OR

2      A SINGLE-FAMILY DWELLING UNIT IN A CONDOMINIUM BUILDING.

---

## I. AGREEMENT

---

We will pay you for **direct physical loss by or from flood** to your insured property if you:

    **1.** Have paid the correct premium;

    **2.** Comply with all terms and conditions of this **policy**; and

    **3.** Have furnished accurate information and statements.

We have the right to review the information you give us at any time and to revise your **policy** based on our review.

---

## II. DEFINITIONS

---

**A.** In this **policy**, "you" and "your" refer to the insured(s) shown on the **Declarations Page** of this **policy** and your spouse, if a resident of the same household. "Insured(s)" includes: Any mortgagee and loss payee named in the **Application** and **Declarations Page**, as well as any other mortgagee or loss payee determined to exist at the time of loss in the order of precedence. "We," "us," and "our" refer to the insurer.

Some definitions are complex because they are provided as they appear in the law or regulations, or result from court cases. The precise definitions are intended to protect you.

**Flood**, as used in this flood insurance **policy**, means:

**1.** A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:

    **a.** Overflow of inland or tidal waters;

  **b.** Unusual and Rapid accumulation or runoff of surface waters from any source;

  **c.** **Mudflow**

**2.** Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a **flood** as defined in **A.1.a.** above.

**B.** The following are the other key definitions that we use in this **policy**:

 **1.** **Act.** The National Flood Insurance Act of 1968 and any amendments to it.

 **2.** **Actual Cash Value.** The cost to replace an insured item of property at the time of loss, less the value of its physical depreciation.

 **3.** **Application.** The statement made and signed by you or your agent in applying for this **policy**. The **application** gives information we use to determine the eligibility of the risk, the kind of **policy** to be issued, and the correct premium payment. The **application** is part of this flood insurance **policy**. For us to issue you a **policy**, the correct premium payment must accompany the **application**.

 **4.** **Base Flood**. A **flood** having a one percent chance of being equaled or exceeded in any given year.

 **5.** **Basement**. Any area of the **building**, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.

 **6.** **Building.**

  **a.** A structure with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site;

  **b.** A manufactured home (a "manufactured home," also known as a mobile home, is a structure: built on a permanent chassis, transported to its site in one or more sections, and affixed to a permanent foundation); or

  **c.** A travel trailer without wheels, built on a chassis and affixed to a permanent foundation, that is regulated under the community's floodplain management and building ordinances or laws.

  **Building** does not mean a gas or liquid storage tank or a recreational vehicle, park trailer, or other similar vehicle, except as described in **B.6.c.** above.

 **7.** **Cancellation.** The ending of the insurance coverage provided by this policy before the expiration date.

 **8.** **Condominium.** That form of ownership of real property in which each **unit** owner has an undivided interest in common elements.

 **9.** **Condominium Association.** The entity made up of the **unit** owners responsible for the maintenance and operation of:

  **a.** Common elements owned in undivided shares by **unit** owners; and

  **b.** Other real property in which the **unit** owners have use rights; where membership in the entity is a required condition of unit ownership.

 **10.** **Declarations Page.** A computer-generated summary of information you provided in the **application** for insurance. The **Declarations Page** also describes the term of the **policy**, limits of coverage, and displays the premium and our name. The **Declarations Page** is a part of this flood insurance **policy.**

 **11.** **Described Location.** The location where the insured **building(s)** or personal property are found. The **described location** is shown on the **Declarations Page.**

 **12.** **Direct Physical Loss By or From Flood.** Loss or damage to insured property, directly caused by a **flood.** There must be evidence of physical changes to the property.

13. **Dwelling.** A **building** designed for use as a residence for no more than four families or a single-family **unit** in a **building** under a **condominium** form of ownership.

14. **Elevated Building.** A **building** that has no **basement** and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns.

15. **Emergency Program.** The initial phase of a community's participation in the **National Flood Insurance Program.** During this phase, only limited amounts of insurance are available under the **Act.**

16. **Expense Constant.** The insured is not responsible for a flat charge you must pay on each new or renewal **policy** to defray the expenses of the Federal Government related to flood insurance.

17. **Federal Policy Fee.** The insured is not responsible for a flat charge you must pay on each new or renewal **policy** to defray certain administrative expenses incurred in carrying out the **National Flood Insurance Program.** This fee covers expenses not covered by the **expense constant.**

18. **Improvements.** Fixtures, alterations, installations, or additions comprising a part of the insured **dwelling** or the apartment in which you reside.

19. **Mudflow.** A river of liquid and flowing mud on the surface of normally dry land areas, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or a saturated soil mass moving by liquidity down a slope, are not **mudflows.**

20. **National Flood Insurance Program (NFIP).** The program of flood insurance coverage and floodplain management administered under the **Act** and applicable Federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B.

21. **Policy.** The entire written contract between you and us. It includes:

    **a.** This printed form;

    **b.** The **application** and **Declarations Page**;

    **c.** Any endorsement(s) that may be issued; and

    **d.** Any renewal certificate indicating that coverage has been instituted for a new **policy** and new **policy** term.

    Only one **dwelling**, which you specifically described in the **application**, may be insured under this **policy**.

22. **Pollutants.** Substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

23. **Post-FIRM Building.** A **building** for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later.

24. **Probation Premium.** A flat charge you must pay on each new or renewal **policy** issued covering property in a community that the NFIP has placed on probation under the provisions of 44 CFR 59.24.

25. **Regular Program.** The final phase of a community's participation in the **National Flood Insurance Program.** In this phase, a Flood Insurance Rate Map is in effect and full limits of coverage are available under the **Act.**

26. **Special Flood Hazard Area.** An area having special **flood**, or **mudflow**, and/or **flood**-related erosion hazards, and shown on a Flood Hazard Boundary Map or Flood Insurance Rate Map as Zone A, AO, A1-A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1-A30, V1-V30, VE, or V.

27. **Unit.** A single-family **unit** you own in a **condominium building.**

28. **Valued Policy.** A **policy** in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss. The Standard Flood Insurance Policy is not a **valued policy.**

29. **Policy Fee** means a flat charge you must pay on each new or renewal **policy.**

**30.  Private Flood Insurance Policy** ("**PFIP**") means this **policy**.

---

### III. PROPERTY COVERED

---

**A.  COVERAGE A - BUILDING PROPERTY**

We insure against **direct physical loss by or from flood** to:

**1.**  The **dwelling** at the **described location**, or for a period of 45 days at another location as set forth in **III.C.2.b.**, Property Removed to Safety.

**2.**  Additions and extensions attached to and in contact with the **dwelling** by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof. At your option, additions and extensions connected by any of these methods may be separately insured. Additions and extensions attached to and in contact with the **building** by means of a common interior wall that is not a solid load-bearing wall are always considered part of the **dwelling** and cannot be separately insured.

**3.**  A detached garage at the **described location.** Coverage is limited to no more than 10 percent of the limit of liability on the **dwelling.** Use of this insurance is at your option but reduces the **building** limit of liability. We do not cover any detached garage used or held for use for residential (i.e., **dwelling**), business, or farming purposes.

**4.**  Materials and supplies to be used for construction, alteration, or repair of the **dwelling** or a detached garage while the materials and supplies are stored in a fully enclosed **building** at the **described location** or on an adjacent property.

**5.**  A **building** under construction, alteration, or repair at the **described location**.

  **a.**  If the structure is not yet walled or roofed as described in the definition for **building** (see **II.B. 6.a.**) then coverage applies:

  **(1)**  Only while such work is in progress; or

  **(2)**  If such work is halted, only for a period of up to 90 continuous days thereafter.

  **b.**  However, coverage does not apply until the **building** is walled and roofed if the lowest floor, including the **basement** floor, of a non-**elevated building** or the lowest elevated floor of an **elevated building** is:

  **(1)**  Below the **base flood** elevation in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO; or

  **(2)**  Below the **base flood** elevation adjusted to include the effect of wave action in Zones VE or V1-V30.

  The lowest floor levels are based on the bottom of the lowest horizontal structural member of the floor in Zones VE or V1-V30 and the top of the floor in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO.

**6.**  A manufactured home or a travel trailer as described in the Definitions section (see **II.B.6.b.** and **II.B.6.c.**).

  If the manufactured home or travel trailer is in a **special flood hazard area**, it must be anchored in the following manner at the time of the loss:

  **a.**  By over-the-top or frame ties to ground anchors; or

  **b.**  In accordance with the manufacturer's specifications; or

  **c.**  In compliance with the community's floodplain management requirements; unless it has been continuously insured by the NFIP at the same described location since September 30, 1982.

7. The following items of property which are covered under Coverage **A** only:

   **a.** Awnings and canopies;

   **b.** Blinds;

   **c.** Built-in dishwashers;

   **d.** Built-in microwave ovens;

   **e.** Carpet permanently installed over unfinished flooring;

   **f.** Central air conditioners;

   **g.** Elevator equipment;

   **h.** Fire sprinkler systems;

   **i.** Walk-in freezers;

   **j.** Furnaces and radiators;

   **k.** Garbage disposal units;

   **l.** Hot water heaters, including solar water heaters;

   **m.** Light fixtures;

   **n.** Outdoor antennas and aerials fastened to **buildings**;

   **o.** Permanently installed cupboards, bookcases, cabinets, paneling, and wallpaper;

   **p.** Plumbing fixtures;

   **q.** Pumps and machinery for operating pumps;

   **r.** Ranges, cooking stoves, and ovens;

   **s.** Refrigerators; and

   **t.** Wall mirrors, permanently installed.

8. Items of property in a **building** enclosure below the lowest elevated floor of an **elevated post-FIRM building** located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a **basement**, regardless of the zone. Coverage is limited to the following:

   **a.** Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

      **(1)** Central air conditioners;

      **(2)** Cisterns and the water in them;

      **(3)** Drywall for walls and ceilings in a **basement** and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;

      **(4)** Electrical junction and circuit breaker boxes;

      **(5)** Electrical outlets and switches;

      **(6)** Elevators, dumbwaiters, and related equipment, except for related equipment installed below the **base flood** elevation after September 30, 1987;

      **(7)** Fuel tanks and the fuel in them;

      **(8)** Furnaces and hot water heaters;

      **(9)** Heat pumps;

      **(10)** Non-flammable insulation in a **basement;**

      **(11)** Pumps and tanks used in solar energy systems;

      **(12)** Stairways and staircases attached to the **building**, not separated from it by elevated walkways;

      **(13)** Sump pumps;

**(14)** Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;

**(15)** Well water tanks and pumps;

**(16)** Required utility connections for any item in this list; and

**(17)** Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a **building.**

**b.** Clean-up.

## B.  COVERAGE B - PERSONAL PROPERTY

**1.** If you have purchased personal property coverage, we insure against **direct physical loss by or from flood** to personal property inside a **building** at the **described location**, if:

**a.** The property is owned by you or your household family members; and

**b.** At your option, the property is owned by guests or servants.

Personal property is also covered for a period of 45 days at another location as set forth in **III.C.2.b.**, Property Removed to Safety.

Personal property in a **building** that is not fully enclosed must be secured to prevent flotation out of the **building**. If the personal property does float out during a **flood**, it will be conclusively presumed that it was not reasonably secured. In that case there is no coverage for such property.

**2.** Coverage for personal property includes the following property, subject to **B.1.** above, which is covered under Coverage **B** only:

**a.** Air conditioning units, portable or window type;

**b.** Carpets, not permanently installed, over unfinished flooring;

**c.** Carpets over finished flooring;

**d.** Clothes washers and dryers;

**e.** "Cook-out" grills;

**f.** Food freezers, other than walk-in, and food in any freezer; and

**g.** Portable microwave ovens and portable dishwashers.

**3.** Coverage for items of property in a **building** enclosure below the lowest elevated floor of an **elevated post-FIRM building** located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a **basement**, regardless of the zone, is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

**a.** Air conditioning units, portable or window type;

**b.** Clothes washers and dryers; and

**c.** Food freezers, other than walk-in, and food in any freezer.

**4.** If you are a tenant and have insured personal property under Coverage **B** in this **policy**, we will cover such property, including your cooking stove or range and refrigerator. The **policy** will also cover **improvements** made or acquired solely at your expense in the **dwelling** or apartment in which you reside, but for not more than 10 percent of the limit of liability shown for personal property on the **Declarations Page**. Use of this insurance is at your option but reduces the personal property limit of liability.

5.  If you are the owner of a **unit** and have insured personal property under Coverage **B** in this **policy**, **we** will also cover your interior walls, floor, and ceiling (not otherwise covered under a flood insurance **policy** purchased by your **condominium association**) for not more than 10 percent of the limit of liability shown for personal property on the **Declarations Page**. Use of this insurance is at your option but reduces the personal property limit of liability.

6.  **Special Limits.** We will pay no more than $2,500 for any one loss to one or more of the following kinds of personal property:

    a.  Artwork, photographs, collectibles, or memorabilia, including but not limited to, porcelain or other figures, and sports cards;

    b.  Rare books or autographed items;

    c.  Jewelry, watches, precious and semiprecious stones, or articles of gold, silver, or platinum;

    d.  Furs or any article containing fur which represents its principal value; or

    e.  Personal property used in any business.

7.  We will pay only for the functional value of antiques.

## C.   COVERAGE C - OTHER COVERAGES

1.  **Debris Removal**

    a.  We will pay the expense to remove non-owned debris that is on or in insured property and debris of insured property anywhere.

    b.  If you or a member of your household perform the removal work, the value of your work will be based on the Federal minimum wage.

    c.  This coverage does not increase the Coverage **A** or Coverage **B** limit of liability.

2.  **Loss Avoidance Measures**

    a.  **Sandbags, Supplies, and Labor**

        (1) We will pay up to $1,000 for costs you incur to protect the insured **building** from a **flood** or imminent danger of **flood**, for the following:

            (a) Your reasonable expenses to buy:

                (i)   Sandbags, including sand to fill them;

                (ii)  Fill for temporary levees;

                (iii) Pumps; and

                (iv)  Plastic sheeting and lumber used in connection with these items.

            (b) The value of work, at the Federal minimum wage, that you or a member of your household perform.

        (2) This coverage for Sandbags, Supplies, and Labor only applies if damage to insured property by or from **flood** is imminent, and the threat of **flood** damage is apparent enough to lead a person of common prudence to anticipate **flood** damage. One of the following must also occur:

            (a) A general and temporary condition of flooding in the area near the **described location** must occur, even if the **flood** does not reach the **building**; or

            (b) A legally authorized official must issue an evacuation order or other civil order for the community in which the **building** is located calling for measures to preserve life and property from the peril of **flood**.

        This coverage does not increase the Coverage **A** or Coverage **B** limit of liability.

**b.  Property Removed to Safety**

**(1)**  We will pay up to $1,000 for the reasonable expenses you incur to move insured property to a place other than the **described location** contains the property in order to protect it from **flood** or the imminent danger of **flood**.

Reasonable expenses include the value of work, at the Federal minimum wage, that you or a member of your household perform.

**(2)**  If you move insured property to a location other than the **described location** that contains the property, in order to protect it from **flood** or the imminent danger of **flood**, we will cover such property while at that location for a period of 45 consecutive days from the date you begin to move it there. The personal property that is moved must be placed in a fully enclosed **building** or otherwise reasonably protected from the elements.

Any property removed, including a moveable home described in **II.B.6.b.** and **c.**, must be placed above ground level or outside of the **special flood hazard area.**

This coverage does not increase the Coverage **A** or Coverage **B** limit of liability.

**3.  Condominium Loss Assessments**

**a.**  If this **policy** insures a **unit**, we will pay, up to the Coverage **A** limit of liability, your share of loss assessments charged against you by the **condominium association** in accordance with the **condominium association's** articles of association, declarations and your deed.

The assessment must be made as a result of **direct physical loss by or from flood** during the **policy** term, to the **building's** common elements.

**b.**  We will not pay any loss assessment charged against you:

**(1)**  And the **condominium association** by any governmental body;

**(2)**  That results from a deductible under the insurance purchased by the **condominium association** insuring common elements;

**(3)**  That results from a loss to personal property, including contents of a **condominium building**;

**(4)**  That results from a loss sustained by the **condominium association** that was not reimbursed under a flood insurance **policy** written in the name of the association under the **Act** because the **building** was not, at the time of loss, insured for an amount equal to the lesser of:

**(a)**  80% or more of its full replacement cost; or

**(b)**  The maximum amount of insurance permitted under the **Act**;

**(5)**  To the extent that payment under this **policy** for a **condominium building** loss, in combination with payments under any other **NFIP policies** for the same **building** loss, exceeds the maximum amount of insurance permitted under the **Act** for that kind of **building**; or

**(6)**  To the extent that payment under this **policy** for a **condominium building** loss, in combination with any recovery available to you as a tenant in common under any **NFIP condominium association policies** for the same **building** loss, exceeds the amount of insurance permitted under the **Act** for a single family dwelling.

Loss assessment coverage does not increase the Coverage **A** limit of liability.

**D.  COVERAGE D – INCREASED COST OF COMPLIANCE**

**1.  General**

This **policy** pays you to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering **flood** damage. Compliance activities eligible for payment are: elevation, floodproofing, relocation, or demolition (or any combination of these activities) of your structure. Eligible floodproofing activities are limited to:

    **a.** Nonresidential structures.

    **b.** Residential structures with **basements** that satisfy FEMA's standards published in the code of Federal Regulations [44 CFR 60.6 (b) or (c)].

**2.** **Limit of Liability**

We will pay you up to $30,000 under this Coverage **D** – Increased Cost of Compliance, which only applies to **policies** with **building coverage** (Coverage **A**). Our payment of claims under Coverage **D** is in addition to the amount of coverage which you selected on the **application** and which appears on the **Declarations page**. But the maximum you can collect under this **policy** for both Coverage **A** – Building Property and Coverage **D** – Increased Cost of Compliance cannot exceed the maximum permitted **by** the Private Market Flood program. We do not charge a separate deductible for a claim under Coverage **D**.

**3.** **Eligibility**

    **a.** A structure covered under Coverage **A** -Building Property sustaining a loss caused by a **flood** as defined by this **policy** must:

       **(1)** Be a "repetitive loss structure." A repetitive loss structure is one that meets the following conditions:

          **(a)** The structure is covered by a contract of flood insurance issued under the **PFIP**.

          **(b)** The structure has suffered **flood** damage on 2 occasions during a 10-year period which ends on the date of the second loss.

          **(c)** The cost to repair the **flood** damage, on average, equaled or exceeded 25% of the market value of the structure at the time of each flood loss.

          **(d)** In addition to the current claim, the **NFIP** and, or **PFIP** must have paid the previous qualifying claim, and the State or community must have a cumulative, substantial damage provision or repetitive loss provision in its floodplain management law or ordinance being enforced against the structure; or

       **(2)** Be a structure that has had **flood** damage in which the cost to repair equals or exceeds 50% of the market value of the structure at the time of the **flood**. The State or community must have a substantial damage provision in its floodplain management law or ordinance being enforced against the structure.

    **b.** This Coverage **D** pays you to comply with State or local floodplain management laws or ordinances that meet the minimum standards of the **National Flood Insurance Program** found in the Code of Federal Regulations at 44 CFR 60.3. We pay for compliance activities that exceed those standards under these conditions:

       **(1)** **3.a.(1)** above.

       **(2)** Elevation or floodproofing in any risk zone to preliminary or advisory **base flood** elevations provided by FEMA which the State or local government has adopted and is enforcing for **flood**-damaged structures in such areas. (This includes compliance activities in B, C, X, or D zones which are being changed to zones with **base flood** elevations. This also includes compliance activities in zones where **base flood** elevations are being increased, and a **flood**-damaged structure must comply with the higher advisory **base flood** elevation.) Increased Cost of Compliance coverage does not apply to situations in B, C, X, or D zones where the community has derived its own elevations and is enforcing elevation or floodproofing requirements for **flood**-damaged structures to elevations derived solely by the community.

       **(3)** Elevation or floodproofing above the **base flood** elevation to meet State or local "freeboard" requirements, i.e., that a structure must be elevated above the **base flood** elevation.

    **c.** Under the minimum **NFIP** criteria at 44 CFR 60.3 (b)(4), States and communities must require the elevation or floodproofing of structures in unnumbered A zones to the **base flood** elevation where elevation data is obtained from a Federal, State, or other source. Such compliance activities are also eligible for Coverage **D**.

    **d.**    This coverage will also pay for the incremental cost, after demolition or relocation, of elevating or floodproofing a structure during its rebuilding at the same or another site to meet State or local floodplain management laws or ordinances, subject to Exclusion **D.5.g.** below.

    **e.**    This coverage will also pay to bring a **flood**-damaged structure into compliance with State or local floodplain management laws or ordinances even if the structure had received a variance before the present loss from the applicable floodplain management requirements.

  **4.**   **Conditions**

    **a.**    When a structure covered under Coverage **A** -Building Property sustains a loss caused by a **flood**, our payment for the loss under this Coverage **D** will be for the increased cost to elevate, floodproof, relocate, or demolish (or any combination of these activities) caused by the enforcement of current State or local floodplain management ordinances or laws. Our payment for eligible demolition activities will be for the cost to demolish and clear the site of the **building** debris or a portion thereof caused by the enforcement of current State or local floodplain management ordinances or laws. Eligible activities for the cost of clearing the site will include those necessary to discontinue utility service to the site and ensure proper abandonment of on-site utilities.

    **b.**    When the **building** is repaired or rebuilt, it must be intended for the same occupancy as the present **building** unless otherwise required by current floodplain management ordinances or laws.

  **5.**   **Exclusions**

    Under this Coverage **D** (Increased Cost of Compliance) we will not pay for:

    **a.**    The cost to comply with any floodplain management law or ordinance in communities participating in the **Emergency Program.**

    **b.**    The cost associated with enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants.**

    **c.**    The loss in value to any insured **building** or other structure due to the requirements of any ordinance or law.

    **d.**    The loss in residual value of the undamaged portion of a building demolished as a consequence of enforcement of any State or local floodplain management law or ordinance.

    **e.**    Any Increased Cost of Compliance under this Coverage **D**:

        **(1)**    Until the **building** is elevated, floodproofed, demolished, or relocated on the same or to another premises; and

        **(2)**    Unless the **building** is elevated, floodproofed, demolished, or relocated as soon as reasonably possible after the loss, not to exceed two years.

    **f.**    Any code upgrade requirements, e.g., plumbing or electrical wiring, not specifically related to the State or local floodplain management law or ordinance.

    **g.**    Any compliance activities needed to bring additions or **improvements** made after the loss occurred into compliance with State or local floodplain management laws or ordinances.

    **h.**    Loss due to any ordinance or law that you were required to comply with before the current loss.

    **i.**    Any rebuilding activity to standards that do not meet the **NFIP's** minimum requirements. This includes any situation where the insured has received from the State or community a variance in connection with the current **flood** loss to rebuild the property to an elevation below the **base flood** elevation.

    **j.**    Increased Cost of Compliance for a garage or carport.

    **k.**    Any structure insured under an **NFIP** Group Flood Insurance Policy.

    **l.**    Assessments made by a **condominium association** on individual **condominium unit** owners to pay increased costs of repairing commonly owned **buildings** after a **flood** in compliance with State or local floodplain management ordinances or laws.

**6. Other Provisions**

    **a.** Increased Cost of Compliance coverage will not be included in the calculation to determine whether coverage meets the 80% insurance-to-value requirement for replacement cost coverage as set forth in **VII.** General Conditions, **V.** Loss Settlement.

    **b.** All other conditions and provisions of this **policy** apply.

---

## IV. PROPERTY NOT COVERED

---

We do not cover any of the following property:

**1.** Personal property not inside a **building**;

**2.** A **building**, and personal property in it, located entirely in, on, or over water or seaward of mean high tide if it was constructed or substantially improved after September 30, 1982;

**3.** Open structures, including a **building** used as a boathouse or any structure or **building** into which boats are floated, and personal property located in, on, or over water;

**4.** Recreational vehicles other than travel trailers described in the Definitions sections (see **II.B.6.c.**), whether affixed to a permanent foundation or on wheels;

**5.** Self-propelled vehicles or machines, including their parts and equipment. However, we do cover self-propelled vehicles or machines not licensed for use on public roads that are:

    **a.** Used mainly to service the **described location**, or

    **b.** Designed and used to assist handicapped persons, while the vehicles or machines are inside a building at the described location;

**6.** Land, land values, lawns, trees, shrubs, plants, growing crops, or animals;

**7.** Accounts, bills, coins, currency, deeds, evidences of debt, medals, money, scrip, stored value cards, postage stamps, securities, bullion, manuscripts, or other valuable papers;

**8.** Underground structures and equipment, including wells, septic tanks, and septic systems;

**9.** Those portions of walks, walkways, decks, driveways, patios, and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured **building** or the **building** in which the insured **unit** is located;

**10.** Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids;

**11.** **Buildings** or **units** and all their contents if more than 49% of the **actual cash value** of the **building** or **unit** is below ground, unless the lowest level is at or above the **base flood** elevation and is below ground by reason of earth having been used as insulation material in conjunction with energy efficient building techniques;

**12.** Fences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks;

**13.** Aircraft or watercraft, or their furnishings and equipment;

**14.** Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment such as, but not limited to, heaters, filters, pumps, and pipes, wherever located;

15. Property not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act and the Coastal Barrier Improvement Act and amendments to these acts;

16. Personal property you own in common with other **unit** owners comprising the membership of a **condominium association**.

---

## V. EXCLUSIONS

---

**A.** We only provide coverage for **direct physical loss by or from flood**, which means that we do not pay you for:

1. Loss of revenue or profits;

2. Loss of access to the insured property or **described location**;

3. Loss of use of the insured property or **described location**;

4. Loss from interruption of business or production;

5. Any additional living expenses incurred while the insured **building** is being repaired or is unable to be occupied for any reason;

6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodelling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities that we describe in Coverage **D** - Increased Cost of Compliance; or

7. Any other economic loss you suffer.

**B.** We do not insure a loss directly or indirectly caused by a **flood** that is already in progress at the time and date:

1. The **policy** term begins; or

2. Coverage is added at your request.

**C.** We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by **flood**. Some examples of earth movement that we do not cover are:

1. Earthquake;

2. Landslide;

3. Land subsidence;

4. Sinkholes;

5. Destabilization or movement of land that results from accumulation of water in subsurface land area; or

6. Gradual erosion.

We do, however, pay for losses from **mudflow** and land subsidence as a result of erosion that are specifically covered under our definition of **flood** (see **II.A.1.c.** and **II.A.2.**).

**D.** We do not insure for direct physical loss caused directly or indirectly by any of the following:

1. The pressure or weight of ice;

2. Freezing or thawing;

3. Rain, snow, sleet, hail, or water spray;

4. Water, moisture, mildew, or mold damage that results primarily from any condition:

    **a.** Substantially confined to the **dwelling**; or

    **b.** That is within your control, including but not limited to:

        **(1)** Design, structural, or mechanical defects;

        **(2)** Failure, stoppage, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; or

        **(3)** Failure to inspect and maintain the property after a **flood** recedes;

5. Water or waterborne material that:

    **a.** Backs up through sewers or drains;

    **b.** Discharges or overflows from a sump, sump pump, or related equipment; or

    **c.** Seeps or leaks on or through the covered property;

    unless there is a flood in the area and the flood is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or seepage of water;

6. The pressure or weight of water unless there is a **flood** in the area and the **flood** is the proximate cause of the damage from the pressure or weight of water;

7. Power, heating, or cooling failure unless the failure results from **direct physical loss by or from flood** to power, heating, or cooling equipment on the described location;

8. Theft, fire, explosion, wind, or windstorm;

9. Anything you or any member of your household do or conspires to do to deliberately cause loss by **flood**; or

10. Alteration of the insured property that significantly increases the risk of flooding.

**E.** We do not insure for loss to any **building** or personal property located on land leased from the Federal Government, arising from or incident to the flooding of the land by the Federal Government, where the lease expressly holds the Federal Government harmless under flood insurance issued under any Federal Government program.

**F.** We do not pay for the testing for or monitoring of **pollutants** unless required by law or ordinance.

---

## VI. DEDUCTIBLES

---

**A.** When a loss is covered under this **policy**, we will pay only that part of the loss that exceeds your deductible amount, subject to the limit of liability that applies. The deductible amount is shown on the **Declarations Page.**

However, when a **building** under construction, alteration, or repair does not have at least two rigid exterior walls and a fully secured roof at the time of loss, your deductible amount will be two times the deductible that would otherwise apply to a completed **building.**

**B.** In each loss from **flood**, separate deductibles apply to the **building** and personal property insured by this **policy.**

**C.** The deductible does not apply to:

    1. **III.C.2.** Loss Avoidance Measures;

2.   **III.C.3.** Condominium Loss Assessments; or

3.   **III.D.** Increased Cost of Compliance.

---

### VII. GENERAL CONDITIONS

---

A.   **Pair and Set Clause**

In case of loss to an article that is part of a pair or set, we will have the option of paying you:

1.   An amount equal to the cost of replacing the lost, damaged, or destroyed article, minus its depreciation; or

2.   The amount that represents the fair proportion of the total value of the pair or set that the lost, damaged, or destroyed article bears to the pair or set.

B.   **Concealment or Fraud and Policy Voidance**

1.   With respect to all insureds under this **policy**, this **policy**:

   a.   Is void;

   b.   Has no legal force or effect;

   c.   Cannot be renewed; and

   d.   Cannot be replaced by a new **PFIP policy**, f, before or after a loss, you or any other insured or your agent have at any time:

      (1)   Intentionally concealed or misrepresented any material fact or circumstance;

      (2)   Engaged in fraudulent conduct; or

      (3)   Made false statements;

      relating to this **policy** or any other **PFIP** insurance.

2.   This **policy** will be void as of the date the wrongful acts described in **B.1.** above were committed.

3.   Fines, civil penalties, and imprisonment under applicable Federal laws may also apply to the acts of fraud or concealment described above.

4.   This **policy** is also void for reasons other than fraud, misrepresentation, or wrongful act. This **policy** is void from its inception and has no legal force under the following conditions:

   a.   If the property is located in a community that was not participating in the **NFIP** on the **policy's** inception date and did not join or re-enter the program during the **policy** term and before the loss occurred; or

   b.   If the property listed on the **application** is otherwise not eligible for coverage under the **NFIP**.

C.   **Other Insurance**

1.   If a loss covered by this **policy** is also covered by other insurance that includes **flood** coverage not issued under the **Act**, we will not pay more than the amount of insurance that you are entitled to for lost, damaged, or destroyed property insured under this **policy** subject to the following:

   a.   We will pay only the proportion of the loss that the amount of insurance that applies under this **policy** bears to the total amount of insurance covering the loss, unless **C.1.b.** or **c.** immediately below applies.

   b.   If the other policy has a provision stating that it is excess insurance, this **policy** will be primary.

   **c.** This **policy** will be primary (but subject to its own deductible) up to the deductible in the other **flood** policy (except another policy as described in **C.1.b.** above). When the other deductible amount is reached, this **policy** will participate in the same proportion that the amount of insurance under this **policy** bears to the total amount of both policies, for the remainder of the loss.

   **2.** If there is other insurance in the name of your **condominium association** covering the same property covered by this **policy**, then this **policy** will be in excess over the other insurance.

**D.   Amendments, Waivers, Assignment**

This **policy** cannot be changed nor can any of its provisions be waived without the express written consent of the Underwriters.  No action we take under the terms of this **policy** constitutes a waiver of any of our rights. You may assign this **policy** in writing when you transfer title of your property to someone else, except under these conditions:

   **1.** When this policy covers only personal property; or

   **2.** When this policy covers a structure during the course of construction.

**E.   Cancellation of Policy by You**

   **1.** You may cancel this **policy** in accordance with the applicable rules and regulations of the **NFIP**.
     **a.** Except with respect to cancellation reasons 1 and 2 in the NFIP Cancellation Guidelines, as policies are only eligible for one year's return premium.
     **b.** Except with respect to cancellation reason 4 in the NFIP Cancellation Guidelines, as policies may not be replaced with a duplicate NFIP policy or another PFIP policy from a carrier different than The Flood Insurance Agency.

   **2.** If you cancel this **policy**, you may be entitled to a full or partial refund of premium also under the applicable rules and regulations of the **NFIP**.

**F.   Nonrenewal of the Policy by Us**

Your **policy** will not be renewed:

   **1.** If the community where your covered property is located stops participating in the **NFIP**; or

   **2.** If your **building** has been declared ineligible under Section 1316 of the **Act**.

**G.   Reduction and Reformation of Coverage**

   **1.** If the premium we received from you was not enough to buy the kind and amount of coverage you requested, we will provide only the amount of coverage that can be purchased for the premium payment we received.

   **2.** The **policy** can be reformed to increase the amount of coverage resulting from the reduction described in **G.1.** above to the amount you requested as follows:

     **a.** Discovery of insufficient premium or incomplete rating information before a loss.

       **(1)** If we discover before you have a **flood** loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current **policy** term (or that portion of the current **policy** term following any endorsement changing the amount of coverage). If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the **policy** to increase the amount of coverage to the originally requested amount effective to the beginning of the current **policy** term (or subsequent date of any endorsement changing the amount of coverage).

       **(2)** If we determine before you have a **flood** loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information within 60 days of our request.  Once we determine the amount of additional premium for the current **policy** term, we will follow the procedure in **G.2.a.(1)** above.

       **(3)** If we do not receive the additional premium (or additional information) by the date it is due, the amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

     **b.** Discovery of insufficient premium or incomplete rating information after a loss:

**(1)** If we discover after you have a **flood** loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current and the prior **policy** terms. If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the **policy** to increase the amount of coverage to the originally requested amount effective to the beginning of the prior **policy** term.

**(2)** If we discover after you have a **flood** loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information before your claim can be paid. Once we determine the amount of additional premium for the current and prior **policy** terms, we will follow the procedure in **G.2.b.(1)** above.

**(3)** If we do not receive the additional premium by the date it is due, your flood insurance claim will be settled based on the reduced amount of coverage. The amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

**3.** However, if we find that you or your agent intentionally did not tell us, or falsified, any important fact or circumstance or did anything fraudulent relating to this insurance, the provisions of Condition **B.** Concealment or Fraud and Policy Voidance apply.

**H.  Policy Renewal**

**1.** This **policy** will expire at 12:01 a.m. on the last day of the **policy** term.

**2.** We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.

**3.** If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:

**a.** If you or your agent notified us, not later than 1 year after the date on which the payment of the renewal premium was due, of non receipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

**b.** If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the **policy**. In that case, the **policy** will remain an expired **policy** as of the expiration date shown on the **Declarations Page**.

**4.** In connection with the renewal of this **policy**, we may ask you during the **policy** term to recertify, on a Recertification Questionnaire we will provide to you, the rating information used to rate your most recent **application** for or renewal of insurance.

**I.  Conditions Suspending or Restricting Insurance**

We are not liable for loss that occurs while there is a hazard that is increased by any means within your control or knowledge.

**J.  Requirements in Case of Loss**

In case of a **flood** loss to insured property, you must:

**1.** Give prompt written notice to us;

**2.** As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;

**3.** Prepare an inventory of damaged property showing the quantity, description, **actual cash value**, and amount of loss. Attach all bills, receipts, and related documents;

4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the **policy** signed and sworn to by you, and which furnishes us with the following information:

   a. The date and time of loss;

   b. A brief explanation of how the loss happened;

   c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

   d. Details of any other insurance that may cover the loss;

   e. Changes in title or occupancy of the covered property during the term of the **policy**;

   f. Specifications of damaged **buildings** and detailed repair estimates;

   g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;

   h. Details about who occupied any insured **building** at the time of loss and for what purpose; and

   i. The inventory of damaged personal property described in **J.3.** above.

5. In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.

6. You must cooperate with the adjuster or representative in the investigation of the claim.

7. The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it.  However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

8. We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

9. At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.

**K.  Our Options After a Loss**

Options we may, in our sole discretion, exercise after loss include the following:

1. At such reasonable times and places that we may designate, you must:

   a. Show us or our representative the damaged property;

   b. Submit to examination under oath, while not in the presence of another insured, and sign the same; and

   c. Permit us to examine and make extracts and copies of:

      (1) Any policies of property insurance insuring you against loss and the deed establishing your ownership of the insured real property;

      (2) **Condominium association** documents including the Declarations of the **condominium**, its Articles of Association or Incorporation, Bylaws, rules and regulations, and other relevant documents if you are a **unit** owner in a **condominium building**; and

      (3) All books of accounts, bills, invoices and other vouchers, or certified copies pertaining to the damaged property if the originals are lost.

2. We may request, in writing, that you furnish us with a complete inventory of the lost, damaged, or destroyed property, including:

   a. Quantities and costs;

   b. **Actual cash values** or replacement cost (whichever is appropriate);

   c. Amounts of loss claimed;

    **d.**   Any written plans and specifications for repair of the damaged property that you can reasonably make available to us; and

    **e.**   Evidence that prior **flood** damage has been repaired.

**3.**   If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may:

    **a.**   Repair, rebuild, or replace any part of the lost, damaged, or destroyed property with material or property of like kind and quality or its functional equivalent; and

    **b.**   Take all or any part of the damaged property at the value we agree upon or its appraised value.

**L.**   **No Benefit to Bailee**

No person or organization, other than you, having custody of covered property will benefit from this insurance.

**M.**   **Loss Payment**

**1.**   We will adjust all losses with you. We will pay you unless some other person or entity is named in the **policy** or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss (or within 90 days after the insurance adjuster files the adjuster's report signed and sworn to by you in lieu of a proof of loss) and:

    **a.**   We reach an agreement with you;

    **b.**   There is an entry of a final judgment; or

    **c.**   There is a filing of an appraisal award with us, as provided in **VII.P.**

**2.**   If we reject your proof of loss in whole or in part you may:

    **a.**   Accept our denial of your claim;

    **b.**   Exercise your rights under this **policy**; or

    **c.**   File an amended proof of loss, as long as it is filed within 60 days of the date of the loss.

**N.**   **Abandonment**

You may not abandon to us damaged or undamaged property insured under this policy.

**O.**   **Salvage**

We may permit you to keep damaged property insured after a loss, and we will reduce the amount of the loss proceeds payable to you under the **policy** by the value of the salvage.

**P.**   **Appraisal**

If you and we fail to agree on the **actual cash value** or, if applicable, replacement cost of your damaged property to settle upon the amount of loss, then either may demand an appraisal of the loss. In this event, you and we will each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the State where the covered property is located. The appraisers will separately state the **actual cash value**, the replacement cost, and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of **actual cash value** and loss, or if it applies, the replacement cost and loss.

Each party will:

**1.**   Pay its own appraiser; and

**2.**   Bear the other expenses of the appraisal and umpire equally.

**Q.  Mortgage Clause**

The word "mortgagee" includes trustee.

Any loss payable under Coverage **A** - Building Property will be paid to any mortgagee of whom we have actual notice as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**1.**  Notifies us of any change in the ownership or occupancy, or substantial change in risk of which the mortgagee is aware;

**2.**  Pays any premium due under this **policy** on demand if you have neglected to pay the premium; and

**3.**  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.

All of the terms of this **policy** apply to the mortgagee.

The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the **building**.

If we decide to cancel or not renew this **policy**, it will continue in effect for the benefit of the mortgagee only for 30 days after we notify the mortgagee of the cancellation or nonrenewal.

If we pay the mortgagee for any loss and deny payment to you, we are subrogated to all the rights of the mortgagee granted under the mortgage on the property.  Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**R.  Suit Against Us**

You may not sue us to recover money under this **policy** unless you have complied with all the requirements of the **policy**. If you do sue, you must start the suit within 1 year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss.  This requirement applies to any claim that you may have under this **policy** and to any dispute that you may have arising out of the handling of any claim under the **policy**.

**S.  Subrogation**

Whenever we make a payment for a loss under this **policy**, we are subrogated to your right to recover for that loss from any other person.  That means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for the loss.  We may require you to acknowledge this transfer in writing. After the loss, you may not give up our right to recover this money or do anything that would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of that money.

**T.  Continuous Lake Flooding**

**1.**  If an insured **building** has been flooded by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in a covered loss to the insured **building** equal to or greater than the **building policy** limits plus the deductible or the maximum payable under the **policy** for any one building loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing:

**a.**  To make no further claim under this **policy**;

**b.**  Not to seek renewal of this **policy;**

**c.**  Not to apply for any flood insurance under the **Act** for property at the **described location**; and

**d.**  Not to seek a premium refund for current or prior terms.

If the **policy** term ends before the insured **building** has been flooded continuously for 90 days, the provisions of this paragraph **T.1.** will apply when the insured **building** suffers a covered loss before the **policy** term ends.

**2.**   If your insured **building** is subject to continuous lake flooding from a closed basin lake, you may elect to file a claim under either paragraph **T.1.** above or paragraph **T.2.** (A "closed basin lake" is a natural lake from which water leaves primarily through evaporation and whose surface area now exceeds or has exceeded 1 square mile at any time in the recorded past. Most of the nation's closed basin lakes are in the western half of the United States, where annual evaporation exceeds annual precipitation and where lake levels and surface areas are subject to considerable fluctuation due to wide variations in the climate. These lakes may overtop their basins on rare occasions.) Under this paragraph **T.2.** we will pay your claim as if the **building** is a total loss even though it has not been continuously inundated for 90 days, subject to the following conditions:

**a.**   Lake **flood** waters must damage or imminently threaten to damage your **building**.

**b.**   Before approval of your claim, you must:

**(1)**   Agree to a claim payment that reflects your buying back the salvage on a negotiated basis; and

**(2)**   Grant the conservation easement described in FEMA's "Policy Guidance for Closed Basin Lakes," to be recorded in the office of the local recorder of deeds. FEMA, in consultation with the community in which the property is located, will identify on a map an area or areas of special consideration (ASC) in which there is a potential for **flood** damage from continuous lake flooding. FEMA will give the community the agreed-upon map showing the ASC. This easement will only apply to that portion of the property in the ASC. It will allow certain agricultural and recreational uses of the land. The only structures it will allow on any portion of the property within the ASC are certain simple agricultural and recreational structures. If any of these allowable structures are insurable buildings under the **NFIP** and are insured under the **PFIP**, they will not be eligible for the benefits of this paragraph **T.2.** If a U.S. Army Corps of Engineers certified **flood** control project or otherwise certified **flood** control project later protects the property, FEMA will, upon request, amend the ASC to remove areas protected by those projects. The restrictions of the easement will then no longer apply to any portion of the property removed from the ASC; and

**(3)**   Comply with paragraphs **T.1.a.** through **T.1.d.** above.

**c.**   Within 90 days of approval of your claim, you must move your **building** to a new location outside the ASC. Underwriters will give you an additional 30 days to move if you show that there is sufficient reason to extend the time.

**d.**   Before the final payment of your claim, you must acquire an elevation certificate and a floodplain development permit from the local floodplain administrator for the new location of your **building**.

**e.**   Before the approval of your claim, the community having jurisdiction over your **building** must:

**(1)**   Adopt a permanent land use ordinance, or a temporary moratorium for a period not to exceed 6 months to be followed immediately by a permanent land use ordinance, that is consistent with the provisions specified in the easement required in paragraph **T.2.b.** above.

**(2)**   Agree to declare and report any violations of this ordinance to FEMA and Underwriters so that under Section 1316 of the National Flood Insurance Act of 1968, as amended, flood insurance to the **building** can be denied; and

**(3)**   Agree to maintain as deed-restricted, for purposes compatible with open space or agricultural or recreational use only, any affected property the community acquires an interest in. These deed restrictions must be consistent with the provisions of paragraph **T.2.b.** above, except that, even if a certified project protects the property, the land use restrictions continue to apply if the property was acquired under the Hazard Mitigation Grant Program or the Flood Mitigation Assistance Program. If a nonprofit land trust organization receives the property as a donation, that organization must maintain the property as deed-restricted, consistent with the provisions of paragraph **T.2.b.** above.

**f.**   Before the approval of your claim, the affected State must take all action set forth in FEMA's "Policy Guidance for Closed Basin Lakes."

**g.** You must have **NFIP** and/or **PFIP** flood insurance coverage continuously in effect from a date established by FEMA until you file a claim under paragraph **T.2.** If a subsequent owner buys **NFIP** and/or **PFIP** insurance that goes into effect within 60 days of the date of transfer of title, any gap in coverage during that 60-day period will not be a violation of this continuous coverage requirement. For the purpose of honoring a claim under this paragraph **T.2.**, we will not consider to be in effect any increased coverage that became effective after the date established by FEMA. The exception to this is any increased coverage in the amount suggested by your insurer as an inflation adjustment.

**h.** This paragraph T.2. will be in effect for a community when the FEMA Regional Director for the affected region provides to the community, in writing, the following:

**(1)** Confirmation that the community and the State are in compliance with the conditions in paragraphs **T.2.e.** and **T.2.f.** above; and

**(2)** The date by which you must have flood insurance in effect.

## U.   Duplicate Policies Not Allowed

**1.** We will not insure your property under more than one **PFIP policy.**

If we find that the duplication was not knowingly created, we will give you written notice. The notice will advise you that you may choose one of several options under the following procedures:

**a.** If you choose to keep in effect the **policy** with the earlier effective date, you may also choose to add the coverage limits of the later **policy** to the limits of the earlier **policy**. The change will become effective as of the effective date of the later **policy**.

**b.** If you choose to keep in effect the **policy** with the later effective date, you may also choose to add the coverage limits of the earlier **policy** to the limits of the later **policy**. The change will be effective as of the effective date of the later **policy**.

In either case, you must pay the pro rata premium for the increased coverage limits within 30 days of the written notice. In no event will the resulting coverage limits exceed the permissible limits of coverage under the **Act** or your insurable interest, whichever is less.

We will make a refund to you, according to applicable **NFIP** rules, of the premium for the **policy** not being kept in effect.

**2.** Your option under Condition **U**. Duplicate Policies Not Allowed to elect which **PFIP policy** to keep in effect does not apply when duplicates have been knowingly created. Losses occurring under such circumstances will be adjusted according to the terms and conditions of the earlier **policy**. The **policy** with the later effective date must be canceled.

## V.   Loss Settlement

**1.   Introduction**

This **policy** provides three methods of settling losses: Replacement Cost, Special Loss Settlement, and **Actual Cash Value**. Each method is used for a different type of property, as explained in **a.- c.** below.

**a.** Replacement Cost loss settlement, described in **V.2.** below, applies to a single-family **dwelling** provided:

**(1)** It is your principal residence, which means that, at the time of loss, you or your spouse lived there for 80% of:

**(a)** The 365 days immediately preceding the loss; or

**(b)** The period of your ownership, if you owned the **dwelling** for less than 365 days; and

**(2)** At the time of loss, the amount of insurance in this **policy** that applies to the **dwelling** is 80 percent or more of its full replacement cost immediately before the loss, or is the maximum amount of insurance available under the **NFIP**.

**b.** Special loss settlement, described in **V.3.** below, applies to a single-family **dwelling** that is a manufactured or mobile home or a travel trailer.

    **c.** **Actual Cash Value** loss settlement applies to a single-family **dwelling** not subject to replacement cost or special loss settlement, and to the property listed in **V.4.** below.

**2.** **Replacement Cost Loss Settlement**

The following loss settlement conditions apply to a single-family **dwelling** described in **V.1.a.** above:

    **a.** We will pay to repair or replace the damaged **dwelling** after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

        **(1)** The **building** limit of liability shown on your **Declarations Page**;

        **(2)** The replacement cost of that part of the **dwelling** damaged, with materials of like kind and quality, and for like use; or

        **(3)** The necessary amount actually spent to repair or replace the damaged part of the **dwelling** for like use.

    **b.** If the **dwelling** is rebuilt at a new location, the cost described above is limited to the cost that would have been incurred if the **dwelling** had been rebuilt at its former location.

    **c.** When the full cost of repair or replacement is more than $1,000 or more than 5 percent of the whole amount of insurance that applies to the **dwelling**, we will not be liable for any loss under **V.2.a.** above or **V.4.a.(2)** below unless and until actual repair or replacement is completed.

    **d.** You may disregard the replacement cost conditions above and make claim under this **policy** for loss to **dwellings** on an **actual cash value** basis. You may then make claim for any additional liability according to **V.2.a.**, **b.**, and **c.** above, provided you notify us of your intent to do so within 180 days after the date of loss.

    **e.** If the community in which your **dwelling** is located has been converted from the **Emergency Program** to the **Regular Program** during the current **policy** term, then we will consider the maximum amount of available **NFIP** insurance to be the amount that was available at the beginning of the current **policy** term.

**3.** **Special Loss Settlement**

    **a.** The following loss settlement conditions apply to a single-family **dwelling** that:

        **(1)** Is a manufactured or mobile home or a travel trailer, as defined in **II.B.6.b.** and **c.**;

        **(2)** Is at least 16 feet wide when fully assembled and has an area of at least 600 square feet within its perimeter walls when fully assembled; and

        **(3)** Is your principal residence, as specified in **V.1.a.(1)** above.

    **b.** If such a **dwelling** is totally destroyed or damaged to such an extent that, in our judgment, it is not economically feasible to repair, at least to its predamage condition, we will, at our discretion, pay the least of the following amounts:

        **(1)** The lesser of the replacement cost of the **dwelling** or 1.5 times the **actual cash value**, or

        **(2)** The **building** limit of liability shown on your **Declarations Page**.

    **c.** If such a **dwelling** is partially damaged and, in our judgment, it is economically feasible to repair it to its pre-damage condition, we will settle the loss according to the Replacement Cost conditions in paragraph **V.2.** above.

**4.** **Actual Cash Value Loss Settlement**

The types of property noted below are subject to **actual cash value** [or in the case of **V.4.a.(2)** below, proportional] loss settlement.

    **a.** A **dwelling**, at the time of loss, when the amount of insurance on the **dwelling** is both less than 80 percent of its full replacement cost immediately before the loss and less than the maximum amount of insurance available under the **NFIP**. In that case, we will pay the greater of the following amounts, but not more than the amount of insurance that applies to that **dwelling**:

(1)  The **actual cash value**, as defined in **II.B.2.**, of the damaged part of the **dwelling**; or

(2)  A proportion of the cost to repair or replace the damaged part of the **dwelling**, without deduction for physical depreciation and after application of the deductible.

This proportion is determined as follows: If 80 percent of the full replacement cost of the **dwelling** is less than the maximum amount of insurance available under the **NFIP**, then the proportion is determined by dividing the actual amount of insurance on the **dwelling** by the amount of insurance that represents 80 percent of its full replacement cost. But if 80 percent of the full replacement cost of the **dwelling** is greater than the maximum amount of insurance available under the **NFIP**, then the proportion is determined by dividing the actual amount of insurance on the **dwelling** by the maximum amount of insurance available under the **NFIP**.

**b.**  A two-, three-, or four-family **dwelling**.

**c.**  A **unit** that is not used exclusively for single-family **dwelling** purposes.

**d.**  Detached garages.

**e.**  Personal property.

**f.**  Appliances, carpets and carpet pads.

**g.**  Outdoor awnings, outdoor antennas or aerials of any type, and other outdoor equipment.

**h.**  Any property covered under this **policy** that is abandoned after loss and remains as debris anywhere on the **described location.**

**i.**   A **dwelling** that is not your principal residence

**5.  Amount of Insurance Required**

To determine the amount of insurance required for a **dwelling** immediately before the loss, we do not include the value of:

**a.**  Footings, foundations, piers or any other structures that are below the undersurface of the lowest basement floor and support all or part of the **dwelling;**

**b.**  Those supports listed in **V.5.a.** above that are below the surface of the ground inside the foundation walls if there is no basement; and

**c.**  Excavations and underground flues, pipes, wiring and drains.

The coverage **D** – Increased Cost of Compliance limit of liability is not included in the determination of the amount of insurance required.

---

**VIII. LIBERALIZATION CLAUSE**

---

If we make a change that broadens your coverage under this edition of our **policy,** but does not require any additional premium, then that change will automatically apply to your insurance as of the date we implement the change, provided that this implementation date falls within 60 days before, or during, the **policy** term stated on the **Declarations Page.**

IN WITNESS WHEREOF, the Insurance Company identified on the Declarations has caused this policy to be signed by its President, Secretary, and a duly authorized representative of the Insurance Company.

PRESIDENT

SECRETARY

LEX 03 05 15



**By:** LEXINGTON INSURANCE COMPANY

**ECONOMIC SANCTIONS ENDORSEMENT**

This endorsement modifies insurance provided by the Policy:

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative



**By:** LEXINGTON INSURANCE COMPANY

## FLOODREADY COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the **policy:**

**I.**   The following coverage is added to **COVERAGE C – OTHER COVERAGES**:

**Flood Damage – Resistant Materials Coverage**

**a.**   Provided that you meet the **primary residence insurance condition** set forth in this endorsement, we will pay the increased cost to replace damaged **finish materials** used in the construction of floors, walls and ceilings that sustain **direct physical loss by or from flood** with **flood damage resistant materials**.

**b.**   Subject to a maximum of $10,000 per event, we will pay up to:

  **i.**   $5,000 per event for the additional cost for such **flood damage resistant materials** used to replace such damaged **finish materials** with respect to that section of flooring that sustains **direct physical loss by or from flood**, and

  **ii.**   $5,000 per event for the additional cost for such **flood damage resistant materials** used to replace such damaged **finish materials** with respect to that section of the walls or ceilings that sustains **direct physical loss by or from flood**,

but in no event shall we pay more than twice the value per square foot of materials of like kind and quality at the time and place of the loss that would have been used to repair or replace such damaged flooring, walls or ceilings.

**c.**   With respect to a **basement**, this coverage is limited to walls and ceilings (not including flooring) and subject to the terms and conditions set forth herein, the replacement with such **flood damage resistant materials** in a **basement** includes the cost of labor to nail it, unfinished and un-floated and not taped, to the framing.

**d.**   If any coverage provided herein is also required by an applicable State or local floodplain management law and is also covered under Coverage **D** – Increased Cost of Compliance, then such coverage shall be first provided under Coverage **D** – Increased Cost of Compliance and then the remaining amount, if any, shall be payable under this coverage, subject to the terms and conditions set forth herein.

**e.**   This coverage does not increase the Coverage **A** or Coverage **B** limit of liability.  No additional deductible applies to this coverage.

II. All of the definitions of this **policy** apply to this endorsement. However, the following definitions apply to this endorsement and supersede any similar definitions of this **policy** to the contrary:

1. **Cosmetic repair** means repair of a cosmetic nature including, but not limited to, cleaning, sanitizing, and resurfacing (such as, sanding, repair of joints and repainting) of the material.

2. **Finish materials** means all coverings, finishes, and elements that do not provide structural support or rigidity to a building or building component.

3. **Flood damage resistant materials** means any building product, material, component or system capable of withstanding direct and **prolonged contact** with floodwaters without sustaining **significant damage.**

4. **Primary residence insurance condition** means a single-family **dwelling** that:

   a. Is your principal residence meaning that, at the time of loss, you or your spouse lived there for at least 80% of:

      i. The 365 days immediately preceding the loss; *or*

      ii. The period of your ownership, if you owned such **dwelling** for less than 365 days *and*

   b. At the time of loss, the amount of insurance in this **policy** that applies to such **dwelling** is 80% or more of its full replacement cost immediately before the loss, or is the maximum amount of insurance available under the **NFIP**.

5. **Prolonged contact** means contact with floodwaters of at least 72 hours.

6. **Significant damage** means any damage requiring more than **cosmetic repair**.

All other terms and conditions of this **policy** remain the same.

315931 (07 19)

_____
Authorized Representative

Rev 8/2020

| FACTS | WHAT DOES AMERICAN INTERNATIONAL GROUP, INC. (AIG) DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and Medical Information<br>• Income and Credit History<br>• Payment History and Employment Information<br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons AIG chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does AIG share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** — such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, conduct research including data analytics, or report to credit bureaus | Yes | No |
| **For our marketing purposes** — to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** — information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** — information about your creditworthiness | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| Questions? | **For AIG Insurance Companies: Call 866-244-4786; Fax: 212-458-7081 or E-Mail:** CIPrivacy@aig.com<br>**For Pet insurance sold by AIG Insurance Companies: Call 866-937-7387 or E-Mail:** CIPrivacy@aig.com<br><br>**For LiveTravel, Inc., Travel Guard Group, Inc. or AIG Travel Assist, Inc.: Call 866-244-4786 or E-Mail:** CIPrivacy@aig.com |

## Who we are

| | |
|---|---|
| **Who is providing this notice?** | The insurance company subsidiaries of American International Group, Inc. (AIG) underwriting property-casualty, accident & health, life insurance and related services and certain marketing subsidiaries of AIG listed below. |

## What we do

| | |
|---|---|
| **How does AIG protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer safeguards and secured files and buildings.  We restrict access to employees, representatives, agents, or selected third parties who have been trained to handle nonpublic personal information. |
| **How does AIG collect my personal information?** | We collect your personal information, for example, when you<br>• apply for insurance or pay insurance premiums<br>• file an insurance claim or give us your income information<br>• provide employment information<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes— information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Our affiliates include the member companies of American International Group, Inc.* |
| **Nonaffiliates** | Companies not related by common ownership or control.  They can be financial and nonfinancial companies.<br>• *AIG does not share with nonaffiliates so they can market to you.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *Our joint marketing partners include companies with which we jointly offer insurance products, such as a bank.* |

## Other important information

This notice is provided by  American Home Assurance Company; AIG Assurance Company; AIG Property Casualty Company; AIG Specialty Insurance Company; Commerce and Industry Insurance Company; Granite State Insurance Company; Illinois National Insurance Co.; Lexington Insurance Company; AIU Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; National Union Fire Insurance Company of Vermont; New Hampshire Insurance Company; The Insurance Company of the State of Pennsylvania; (collectively  the "AIG Insurance Companies"). This notice is also provided by certain marketing subsidiaries of AIG, including Morefar Marketing, Inc., LLC, Travel Guard Group, Inc., AIG Travel Assist, Inc. and LiveTravel, Inc. who market insurance or non-insurance products and services to consumers.

**For Vermont Residents only**. We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.  Additional information concerning our privacy policies can be found using the contact information above for Questions.

**For California Residents only**. We will not share information we collect about you with nonaffiliated third parties, except as permitted by California law, such as to process your transactions or to maintain your account.

**For Nevada Residents Only**. We are providing this notice pursuant to Nevada state law.  You may elect to be placed on our internal Do Not Call list by contacting us as listed above.  Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington Street, Suite 3900, Las Vegas, NV 89101; Phone number: 702-486-3132; email: aginfo@ag.nv.gov.  You may contact the applicable customer service department using the contact information above or by writing to us at Privacy Officer, 175 Water Street, 18th Floor, New York, NY 10038.

You have the right to see and, if necessary, correct personal data. This requires a written request, both to see your personal data and to request correction. We do not have to change our records if we do not agree with your correction, but we will place your statement in our file. If you would like a more detailed description of our information practices and your rights, please write to us at: Privacy Officer, 175 Water Street, 18th Floor, New York, NY 10038.

## THE FLOOD INSURANCE AGENCY PRIVACY POLICY STATEMENT

The Flood Insurance Agency wants you to know how we protect the confidentiality of your non-public personal information.  We want you to know how and why we use and disclose the information that we have about you.  The following describes our policies and practices for securing the privacy of our current and former customers.

**INFORMATION WE COLLECT**

The non-public personal information that we collect about you includes, but is not limited to:

- Information contained in applications or other forms that you submit to us, such as name, address, and social security number

- Information about your transactions with our affiliates or other third-parties, such as balances and payment history

- Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history

**INFORMATION WE DISCLOSE**

We disclose the information that we have when it is necessary to provide our products and services.  We may also disclose information when the law requires or permits us to do so.

**CONFIDENTIALITY AND SECURITY**

Only our employees and others who need the information to service your account have access to your personal information.  We have measures in place to secure our paper files and computer systems.

## <u>RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION</u>

**You have a right to request access to or correction of your personal information that is in our possession.**

**CONTACTING US**

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please contact the agent or broker who handled this insurance.  We can provide a more detailed statement of our privacy practices upon request.

84130 (03 14)